The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. The first case is 20-6163, in re. Precious Latricia Oliphant. Ms. Baldwin, are you there? I am, Your Honor. You represent Ms. Oliphant? I do. Well, we're pleased to have you, and you may proceed. Thank you. Good afternoon, Your Honors. Melissa Baldwin on behalf of Precious Oliphant. We are asking this Court to reverse Ms. Oliphant's summary contempt conviction for saying a three-word profanity on her way out of the courtroom when nothing was occurring at the bench. The contempt conviction here suffers from three errors. First, the conviction is predicated on a single isolated profanity not directed at the Court, which presents a problem under the Supreme Court's case in Eaton. Ms. Baldwin, as to that point, and I agree with you, that's a significant issue in the case, if Ms. Oliphant's comment was not directed to the magistrate judge, who was it directed to? Well, we simply don't know who, if anyone, it was directed at. I mean, the magistrate judge made no finding that it was directed at the Court, and due to that instance. And moreover, the record, you know, the record, excuse me, contains, it's subject to reasonable dispute who, if anyone, it was directed at. Perhaps it was directed at the defendant, Mr. Williams, for getting himself in a situation where he's going to prison for 15 years. Perhaps it was directed at the co-defendant who got Mr. Williams into the situation in the first time, in the first place. Perhaps it was the defense counsel who misrepresented to Ms. Oliphant how much time Mr. Williams was looking at. Perhaps it was directed at the Court, perhaps another courtroom spectator. We simply don't know, and because we don't know, this Court is limited to affirming it on the basis that the magistrate found, and in this case, it was simply the use of a single isolated profanity. And as explained- Let me ask you this. I'd like to differ, Judge Baldwin. Well, I think we're going to ask the same question. The district judge did make a finding that the outburst was directed to the magistrate judge. Can we rely on that? No, you cannot. And so this was pretty directly addressed by the 11th Circuit in the Matthews case, where the judge who witnessed the misbehavior has to be the one certifying the facts. And so in Matthews, it was a visiting judge, and the chief judge in that district reviewed the transcript and said, okay, I know what the contempt is. And the 11th Circuit said, no, you cannot do that. It must come from the observing judge. So you can't rely on the district judge's finding, and in fact, the district judge should have never made that finding in the first place. Ms. Baldwin, so if the magistrate judge had made that finding, you might have a different argument about the sufficiency of the evidence to support it, right? But your point is that the magistrate judge, as the finder of fact, was the only person who could make that finding, and it had to do it as part of the contempt proceeding. Is that right? Correct. If the magistrate judge had made the finding, it was directed at the court, we wouldn't be raising an Eaton claim here. We would likely be raising perhaps a sufficiency claim on the obstruction and intent points, and certainly the abuse in the summary procedure, because that would track exactly what happened in the First Circuit case, Brown, where the judge found a profanity uttered on the way out of the courtroom was directed at the judge, but the First Circuit was concerned with that finding and said it was an abuse of discretion not to give that person an opportunity to defend themselves. So can I ask you about that? What exactly is the process that you envision, or what does the law require in terms of a summary contempt proceeding in your mind, and what was missing here? Certainly, and so I would direct the court to the Second Circuit decision in Doral Produce, and I think they do a good job. They rely heavily on Judge Friendly's dissent in a prior case, where just because it's summary, you know, that dispenses with the normal procedural protection, but that doesn't mean you take away someone's basic opportunity to speak in their defense, and so that's all we're asking for here. It would be very limited to the fact... Well, I mean, I don't think it's fair to say that the court did not give your client an opportunity to speak. I suppose your argument is that she had absolutely no clue what the heck was going on. She was hauled up in front of the judge, and she was told that she had uttered an expletive and that the court had heard it, and it's the presence of the court, and that the court was going to proceed to contempt, but that's it, and I guess your point is that's not enough? Well, my point is there are two points addressed in that, and the fact she had no notice and was just kind of hauled in, that goes to the ordinary review and Rule 51 provision, but the opportunity to speak is separate, and that goes to a meaningful opportunity to speak in her defense, and so in Doral Produce there, the court found the person in contempt and then said, do you want to say anything? And the Second Circuit said that's not a meaningful opportunity in her defense, because at that point, the court's already found you in contempt. What good is it to say like, well, no, I didn't do that, so you have to give someone a meaningful opportunity to speak, and regardless of the parameters, it certainly wasn't the case here where Ms. Oliphant wasn't given any opportunity to defend herself before she was held in contempt. Indeed, the magistrate judge- You're saying she should have been given some kind of a notice. What's the notice that you're talking about? Oh, sure. So the notice for the opportunity to speak would simply be saying like, Ms. Oliphant, there is a provision that prohibits misbehavior that obstructs the administration of justice. I heard you say, piece of SHIT, if you're going out the courtroom, do you have anything to say for yourself before I decide whether or not you committed that attempt? Done. It's very short, and it wouldn't be a burden, and it could get rid of some of the problems we're facing here, and especially like this woman ended up spending 13 days in jail for this. So the opportunity to clear up any confusion or address this- Are you saying she should have been given a lawyer? No, no, no, I'm not. You don't say that. Now, they cite the- Ms. Ray filed a 28-J letter, and the government relies on the- I think it's Morello or something like that, the opinion that recently that Judge Floyd wrote, and that was on the panel, I think. Do you think that Morello case helps him, or you? To the extent it has any bearing, it certainly- Does it help the magistrate judge, or does it help- Who's in favor of the Morello case? It favors us, and that's because there was evidence. So there, the immigration judge specifically testified that it was visually disruptive. So again, that's the finding missing here, going to the obstruction element. There was also, in addition, there was a warning here. There were multiple warnings given to that attorney in the immigration proceeding. There was both a posting- That's Morello. She was given warning. Oh, yes, yes. There was a- But I thought you would personally, you would say, well, that was not a summary proceeding. That was not a summary- Oh, no, no, it wasn't a summary proceeding. So- She had a trial. Right, yes. No, it was a trial, but the warning goes to show that the court has other ways of dealing with it. So having a district judge give a warning, that kind of conduct isn't tolerated. If it happens again, you're going to be in contempt. That is something that can easily be accommodated to both ensure the rights and justice for people in the courtroom, and the court's ability to maintain decorum. Ms. Baldwin, just to be clear, though, a warning is not absolutely required. I think in this case, if Ms. Oliphant, if it had been clear that Ms. Oliphant had directed the expletive at the court, and the court had made a finding to that effect, warning or no, I would think that would be grounds for contempt. Do you agree? Yes. And so profane insults to the judiciary are kind of a separate subset of contempt. And it's very, that's, we don't question those line of cases, we just, our argument is they don't apply here. I'd like to just move on to the insufficient evidence, because even putting aside the Eaton problem here, this conviction isn't- That's your second point, insufficient evidence? Yes. There is not substantial evidence here to support the contempt conviction. On two elements of the contempt. First is Ms. Oliphant's wrongful intent. So intent is a requirement to convict someone of contempt, and here, the magistrate judge made no findings whatsoever on intent. And again, this court can't go outside and make its own findings, especially where the record is subject to differing interpretations. For example, the government claims the fact that Ms. Oliphant was on her way out of the versus an alternative and plausible, reasonable explanation is that Ms. Oliphant, you know, waited until the proceeding was over, the court wasn't doing anything, to not show disrespect for the court. Ms. Baldwin- Let me ask you this- Go ahead, Judge Boyd- Let me ask you this, you did use the word reasonable, it just triggered in my mind, do you think he should have made a finding that she was guilty of criminal contempt beyond a reasonable doubt? Yes. Well, I mean, I think that's something that the fact he convicted her of contempt, I would say necessarily meant beyond a reasonable doubt, but if you convict someone of contempt, you have to, it has to be guilt beyond a reasonable doubt. Judge Boyd- Ms. Baldwin, just to follow up on that, so understanding that Ms. Freeman is not a lawyer, and earlier on you were talking about the myriad possibilities that the expletive might have meant in the context of these proceedings, but as I understand it, this was a case where the parties had agreed on a sentence, right? So there was no dispute about what was going to be happening to the criminal defendant in this case, her boyfriend, and it was nothing out of the ordinary that I could tell from the proceeding that would have resulted in a reasonable observer having been upset at what the judge had been doing. So if we're going to speculate, it seems to me that the speculation cuts against the government's claim that the expletive was actually directed at the court, given the context of the hearing and the fact that, at least from what I can tell from the cold record, it's nothing to suggest that the judge did anything that would have drawn the ire of anyone in that courtroom. I completely agree, Judge Diaz. I mean, when I first heard that, my first thought was she was referring to her boyfriend or the co-defendant, you know, the people that engaged in the crime that led to the situation. So I agree with that point, and that's just to, again, support the insufficient evidence. And I'd like to move on to obstruction here, because there is a little dispute as to whether or not our argument that the contempt adjudication itself can't be subsumed into the obstruction element, whether or not this panel is free to reach that issue. And indeed, they are. Warlock dealt with, both Warlock and Peebles dealt with non-summary contempt, so there was no suggestion that the judicial investigation occurred independently of the contempt adjudication. So here, that is squarely presented, and it is what the Oberhelman Seventh Circuit Court was concerned about, where if the contempt adjudication can supply the obstruction, that will write the element out of the statute. And so there has to be something aside from the contempt adjudication that delayed or made cost to the court. And here, again, the Rule 42 certification doesn't tell us anything about what effect Ms. Oliphant's three-word profanity had on the courtroom administration. Was there an ongoing proceeding at the time of this utterance? No. No. The court was active. Judge Kerr was on the bench, but there was no proceeding occurring. If you look at the transcripts, the Rule 11 proceeding concluded at 10.40 a.m. without incident. The profane remark occurred at 10.40 a.m., and the summary contempt adjudication was completed at 10.42 a.m. Is there an indication in the record of what the next proceeding was, or if there was one? There was another proceeding. I know that that happened. I'm not sure it's – I know for sure it was, because I contacted the court reporter about – But does the record show – I'm talking about the record before us. I don't think there's anything in the docket report or that was in the transcribed hearings, so no. So are you saying there's nothing to obstruct? Right. There was nothing – I'm sorry. Go ahead. There was nothing to obstruct, and so that's part of why this is materially different. We are definitely sympathetic to the struggles lower court judges have sometimes with containing everyone, ensuring justice can be done, but this is not the situation. Certainly, if there was a profane remark when the judge was giving jury instructions or advising a defendant of their rights, that would be a different situation, and we're in no way suggesting that reversing Ms. Oliphant's contempt conviction will tie a judge's hands to deal with those more egregious situations, emergencies, or just more clear acts of contempt. And so my final point is the summary procedure, and it was unnecessary and excessively summary. So we've already touched a little bit about the lack of an opportunity to speak on one's behalf, and so that's not something that the Supreme Court or this court's precedent currently requires, but the Second Circuit has required it, and the First Circuit in a similar situation, basically where it wouldn't be unreasonable to do so and it would be helpful. It is an appropriate opportunity for the judge to give, and again, there was no immediate penal vindication here. The judge had other options to deal with Ms. Oliphant's behavior, such as a public reprimand or a warning that additional conduct ... I'm sorry, may I finish my thought? You go right ahead, and to the extent you have questions, you better just stay with us. Of course, yes, Your Honor. Okay. So, and could have given a warning, and she would have been held in contempt if they violated it. And so for these reasons, the conviction both runs afoul of Eaton, is unsupported by substantial evidence, and the summary procedure that procured it was an abuse of discretion, so the conviction should be reversed. I have a question or two, yes. Now, the following day, or at least within the 24 hours or so, somebody asked for counsel for this lady after she'd been put in jail, and counsel was appointed, but then there's an indication that the public defender didn't know about it for five days. What's the reason for that? So it's certainly not on the record, and honestly, our office doesn't know. All we know is there was this five-day delay between the court agreeing to appoint her counsel and that being transferred to our office to appoint her counsel. So unfortunately, I don't have much more explanation for the court. And then there was a delay. She had a 10-day sentence, and she served 13. How did she end up serving three extra days? The marshals mixed it up, didn't release her, and just released her on the 13th as opposed to the 10th day. By the time we found out, she was already out, so we weren't able to assist. And I heard you say you want a reversal. Is there an alternative relief for a trial at this point, or is that kind of moot? So if it's unsupported by insufficient evidence or runs afoul of Eaton, then the only remedy for those errors would be reversal. The issues with the summary procedure itself, you could remand it. We're asking that you not do it, and we rely on you. I understand that you're doing exactly right for your client, but I'm asking you, if there's an alternative, if we don't agree with you on everything about the summary reversal, is there a basis for vacating and then giving the lady a trial? So I believe the issue that you could do that if you rejected our Eaton and insufficient evidence, but found our summary procedure argument meritorious, a remedy that has been there is to vacate the conviction and remand it. For example, if you found the summary procedure was unnecessary, you could order it remanded to import with the non-summary procedure. And would her counsel stay with her, or would she be without counsel for this trial? I believe she'd be with counsel if it was a non-summary. With counsel. Now, would the trial be before the same judge, or would there be a different judge? I believe it would be before the same judge. The judge only has to recuse, essentially, if he's embroiled in the controversy. So I guess to the extent maybe if the utterance was directed at him, there may be a question as to whether or not Judge Kerr should preside. But on this record, I think maybe he'd preside, but leave open the possibility. There could be a problem. I'll tell you, before you sit down here, I'll give you a lead to look at for that last question. There's a case called N. Ray Richard Nell, N-E-L-L, 1971, opinion, published opinion of the Fourth Circuit, written by, authored by Judge Hangeworth. You might look at that on that last question. That's all I have. I'm sorry. Judge Diaz, Judge Floyd, you have questions? Go ahead. I do not. Thank you, Judge King. I don't. I don't either, Judge King. Thank you very much, Ms. Baldwin. And you'll say you've got some rebuttal time still. Ms. Ray, good to have you with us. Thank you so much, Your Honor. May it please the court, Amy Ray for the United States. Your Honor, Judge Kerr properly exercised his summary contempt authority. And a couple of things I want to note right off the bat right at the beginning is, one, this court has made very clear that if a defendant or a person in a courtroom engages in conduct that is disrespectful or sufficiently disruptive, then the court may exercise its summary contempt authority. And that means no notice and no hearing. That's part of the summary contempt proceeding. So in this case, Judge Kerr gave- I'll say about that, Ms. Ray. I was impressed with the fact that, you know, his name's on our building down here in Richmond. And he's quoted in one of these briefs about, was it the Eaton case back in the early 70s? So, Your Honor, the Eaton case, the reason that the Eaton case is not helpful to Ms. Oliphant is that in Eaton, this court said that a single expletive or profane language does not warrant summary contempt. But the court noted that there was no allegation in that case that the utterance of that profanity had been loud or boisterous. And also, it was clear in the context of that case where the word was chicken shit, if you may, was talking about an assailant on cross-examination. This is very different because this isn't simply a word uttered without loud. I mean, Judge Kerr found that it was in- she shouted it in a loud and angry tone as she was walking out. This is not the same thing as any of the cases that Ms. Baldwin has cited because every single one of those cases is not a loud and angry tone shouted out in the middle of a courtroom. It doesn't matter whether this was directed at the magistrate judge or at the defendant or more frighteningly, perhaps, at one of the spectators. In other words, what we know about this language- Ms. Ray, I'm sorry. Judge Diaz here. Let me just read you a couple of sentences from Eaton. The court there said a single isolated use of street vernacular not directed at the judge or any officer of the court. So that's the first problem you have is that even though you're making an inference, or at least the district court made an inference and you support that inference, there was no finding by Judge Kerr that it was actually directed at him or any officer of the court. And then the court went on to say, cannot constitutionally support the conviction of criminal contempt. And then it said, the vehemence of the language used is not alone the measure of the power to punish for contempt. So that seems to address the first part of your argument that, you know, vehemence and loudness of the profanity. So I'm having a hard time distinguishing Eaton in this context, particularly since there's no finding in the record as to who that expletive was directed at. So Judge Diaz, I would respectfully say that when the court says vehemence of the language, that means the word itself, right? That this word contains power. In that case, it was chicken. That that word contains power. But what the court noted and was very clear about in Eaton was that there was no allegation that it was loud or boisterous. Those allegations not only exist in this case, that was a finding made by the magistrate judge. It was loud. It was angry. She shouted it. Okay. So you're suggesting that a single loud profanity warrants a 10 day prison sentence that ended up being 13 days in jail. Is that what you're saying? You're I am saying that a loud, profane remark uttered at someone in the courtroom, there has to be an object to piece of shit, right? There's an object to that. She's calling someone or something a piece of shit. And I'm sorry for the bad language. I'm not sure how else to do this. Okay. Well, the witness, the witness in Eaton was directing the language at the defendant, right? Calling him a chicken shit. On cross-examination, quiet, you know, that's very different from someone leaving the courtroom and yelling it. And that is a distinction the Supreme Court itself made. There was no allegation in that case that it was loud or it was boisterous. Now, we can ask ourselves whether or not the length of the sentence was appropriate, but the defendant's not actually challenging that. She's not saying the judge didn't have authority to sentence Ms. Oliphant to 10 days. Okay. Just so that I'm clear, Ms. Ray, about your position in this case, it doesn't rise or fall on whether or not we make the inference as to whom it was directed? Not at all. I would say that when somebody calls somebody in the courtroom by that word and calls them that name, then it's just as harmful to the disorder, to the orderly conduct of the officer, a litigant, or a spectator. It doesn't matter to whom it was directed. You're saying that someone, it was directed at someone. Maybe it was just the whole proceeding. I don't know. Well, if it was the whole... Do we know on the basis of this record? Well... Your Honor, if it was the whole proceeding, I mean... We know there were three words, three short words. Yes, right. Well, three short, profane... We know that the whole proceeding lasted two minutes, and we know that this lady went to jail. Did the judge know anything else about this lady that's not in the record? Did he know whether she was employed or whether she was a girlfriend? I mean, that's not in what he said, I don't think. It is actually... Yes, sorry to interrupt you, Your Honor. Go ahead. I'm sorry. The answer to the question is... Did he know whether she had children at home or whether she worked or how old she was or anything before he put her in prison? No, so what we know is that he asked her on whose behalf she was before he found her in contempt. He basically said, what are you, you know, what's your involvement here? Who are you here for? And she said, I'm here on behalf of the defendant. I think he said it on behalf of the defendant, didn't he? Pardon me? No, she said that. I'm here. She said, I'm here on behalf of the defendant. And those are her words. No, the court said, are you here on behalf of the defendant? He's the one that raised the defendant. He did. He did. But then she says, and I'll quote it, yes, on behalf of the defendant. Go back three lines. You know, he did suggest it on behalf of the defendant. But she doesn't say that she's defendant's girlfriend. Absolutely correct. And she doesn't say that. And he does ask, are you here on behalf of the defendant? What's your involvement? And she says, yes, on behalf of the defendant. Who was it that called her his girlfriend? We only know that on appeal. We don't. That's not something that was in the record at the time that Judge Kerr held her in summary contempt. But I want to make the point that the whole purpose of summary contempt is to regain control of a courtroom or to respond to something that happens in the courtroom that is disrespectful of the solemnity and the place of the courtroom. So the whole purpose of it is to be able to do it quickly. And you take care of it right away so that it discourages anyone from engaging in that kind of behavior again. And lots of courts have recognized, and I would refer the court, for example, to the District of Columbia's In Re Sealed case, that the use of profanity in a courtroom directed at someone, in that case, the court. But I would respectfully suggest that I don't know why directing profanity at a court is any worse than directing it at a spectator or a litigant if it is loud and angry, which was not the case in Eaton. The purpose of the summary contempt proceeding is to be able to do that quickly. And it is fully authorized if it is not. There's no notice and no hearing. But Judge Kerr- So Ms. Ray, under your scenario, any defendant, potential contemnee, who is very polite and speaks in a low voice, but issues a, you know, just starts hurling invectives left and right, that's perfectly fine. No, Your Honor, invectives left and right would not be. But a single expletive that was not directed, that was not- What about if Ms. Oliphant had said, what about if Ms. Oliphant had said in a very respectful tone of voice, Judge Kerr, or just, this is a piece of shit, had not yelled it? Well, if she had done that, I don't think the court would have heard her, and I don't think we would be here. Well, what if the- If she had done it- No, okay, what if the marshal, someone in the gallery had heard it? Yeah, then I don't think that if she just said, this is a piece of shit, no, we wouldn't be here. I don't think, and if we were here, I don't think that it would be defensible under Eaton if it were not directed at a court. But what we have under Eaton is saying, you know, if it's loud and boisterous, because the court in Eaton specifically noted that that was, those allegations were not present. And here we have a loud expletive directed at someone. This is not, you know, we may say, son of a- Ms. Rhea, you know, I get that. You know, I understand completely that this is not behavior that one would necessarily condone or would simply want, certainly would want to try to prevent. But the other thing that's important about this case is that she said it as she was on her way out the door. So it's not clear to me how she would have been disrupting any proceedings. So it seems like you're left with sort of the deterrence aspect of this. You don't want this to occur. And so you haul her back in and you hold her in contempt. Is that the objective here? Is that why you think that's appropriate? Well, I certainly, I guess two responses to that, Judge Diaz. The first is that what she did was sufficient to qualify as disrupting the court proceedings. Court was still in session. What was the proceeding? They were moving from one proceeding to the next. And this court in Peoples said specifically, we have held that the delay and distraction resulting from a court's investigation of misconduct can be considered in determining if a defendant has obstructed the administration of justice. So when he asked the court, the marshal to go and get her right then, there's a delay in the movement and the transition from one court proceeding to the next. He was on the bench. Court was in session. And even in Peoples, one of the points that the court made in Peoples was that the court security officer in that case had to go and respond. And that's exactly, and the court said in Peoples, even if the Seventh Circuit rule applied, which is that the obstructive act itself can't be the, the act that is the contempt can't itself provide the obstruction. Even if that were true, this court recognized in Peoples that where a court security officer has to respond, then that is enough because that is more than simply the obstructive act or the, the, the, sorry, the, the act of that is the contempt. So the, I, so I want to respond Judge Diaz by first saying that this, we don't concede at all that this did not obstruct proceedings because they did. And when Ms. Baldwin says that it was over at the time, because you can tell from the transcript, well, the transcript ends with her saying piece of that's, that's the end of the transcript. So then we go and start the next transcript that said, that begins with those words. So there was an open court proceeding. And then the second point is that it isn't just deterrence, but this court and others have recognized that the demoralization of a court proceeding, that it, that happens when someone expresses outrage in a public way, if it's, if it is a single expletive that is not spoken loudly or angrily, then, and it's not directed at the court, then Eaton tells us that's not enough. But what Eaton also tells us is that if it is in a loud and angry tone, if it interrupts that court proceeding, if the judge has to stop, if they ask the marshal to go get her and now we have to open a new proceeding that interferes with the orderly administration of justice. And the question is, did the court have the discretion to do this? So we've argued plain error, but even if plain error doesn't apply, this is an abuse of discretion standard of review. Did Judge Kerr actually abuse his discretion in exercising his summary contempt authority when on her way out of the courtroom, when presumably she would think she could get away with it? The defendant yells this at someone in that courtroom. And I would respectfully suggest that there's no abuse of discretion in, in invoking and exercising his summary contempt authority. Then the question becomes, did he do it properly? Is there sufficient evidence? Well, he didn't have to. How do we, how do we know? I'm sorry. How do we know that it was directed at someone in the courtroom? Could it not have been directed at someone outside of the courtroom? I don't think that there would be any reason. I mean, it's hard for me to imagine that it could be, but let's put it this way. Judge Diaz, no matter to him, it was actually directed. Everyone in that courtroom had to wonder who was that directed to? It stopped things. It was, it was disruptive in a way that was harsh, angry, loud, and not something that a magistrate judge should have to, should, should not be able to respond to appropriately. And she's not challenging the 10 day sentence. She's challenging the sufficiency of the evidence. So let's go through the sufficiency of the evidence. Was there misbehavior? Yes. Did it occur in front of the magistrate judge? Did the judge witness it? Yes. Was it sufficiently disruptive that it interfered with the orderly administration of justice? I've already addressed that. Yes. And then the question is, could, would Ms. Oliphant have known or reasonably should have known that her conduct is wrongful? And while the magistrate judge did not make an explicit finding that she would know, multiple courts have recognized that when someone provide is that kind of an outburst expletives in a courtroom, we know, we all know when we go into a courtroom, that that's not appropriate conduct, that that conduct is wrongful. And so this court can uphold that. In fact, in, in the in real resealed case that I mentioned earlier from the DC circuit of 2010 case, the defendants, after he, the sentence was announced, it was all done. The defendant said, F y'all didn't say to whom that was directed. And the 10th, the DC circuit upheld it and said that was inherently disruptive and self evidently intended to show contempt. So I would respectfully suggest that all of those elements are met here and that the district court did not clearly err. And it is a clear error standard of review in terms of finding that the, um, that the element of intent was satisfied. It did not clearly err. And all of those were satisfied and he had the discretion to employ the summary contempt proceedings and properly did so. In terms of. Ms. Baldwin mentions the, uh, uh, maybe you're getting to this Ms. The process itself was flawed because her client wasn't really given an opportunity to speak and defend herself against the charge. You want to address that? Sure. Thank you, Judge Diaz. Um, summary contempt does not require hearing. She didn't have to have any, uh, any opportunity, but she did. He asked her who she was there for. She said on behalf of the defendant. And then after he said, okay, I'm going to hold you in contempt. Do you have anything else you want to say? That he gave her the opportunity to explain. And it's possible that she had, she explained, well, I didn't really mean I wasn't talking about you, your honor. I wasn't talking about spectators. He may have, he may have gone back on his finding of contempt, but even if he didn't, she had the opportunity to request for leniency to request leniency. Neither of those things is required in a summary contempt proceeding, but he gave them to her. Now I do want to address Ms. Baldwin references, the Brown case out of the first circuit saying you know, all of these cases say, if a judge, you know, it's a good idea to provide more rather than less process, I suppose, if it's, if it's not a problem, but in Brown, the court said, if it hadn't been a two year sentence, if the court had simply imposed a normal length of contempt sentence, then the court would not have remanded it for more procedure. So we can look back now and say, well, gee, it would have been nice if judge care had given her more of an opportunity. It would have been nice if she had had more of a chance to speak. But the question is, what does the law require? And when does the judge act within his discretion? And the law doesn't require an opportunity to speak in summary contempt proceedings. Eaton didn't prohibit summary contempt in this context. In fact, if it had been loud and boisterous, Eaton suggests that this was exactly appropriate. And so if then we have all of the elements satisfied and they occur in front of the judge, he had the discretion. There was no abuse of discretion. And was there a finding that the comments or the single expletive was, as you put it, loud and boisterous? Absolutely. He said he, she shouted it in a loud and angry tone and the entire courtroom could hear. And he said, shouted loud and angry. I do want to quickly touch on what the relief should be. Of Ms. Oliphant and say that it would not be appropriate to summarily reverse Judge Kerr's order. He should have the opportunity if one of the suggestions is that he should have found to whom it was directed. If this court finds that that that legally matters, then he should have the opportunity to make that finding having witnessed the conduct himself. And likewise, if this court finds that somehow it's not enough to reasonably infer the intent and he has to explicitly find it, then it should be remanded to give him the opportunity to reconsider. I'm sorry. What's the authority for that? I mean, it's a criminal trial, criminal hearing. It's supposed to be proved beyond a reasonable doubt. The finder of fact is supposed to make all of those findings in the first instance. You don't get a do-over in a criminal trial, in a bench trial, for example, if a judge fails to find facts. So why would that be any different here? I see that my time is up, Your Honor. May I? You go right ahead. You go right ahead and answer, Ms. Ray. Thank you, Judge King. That and other questions you may get. Oh, thank you, Your Honor. This is the question is he so after you hold a hearing, you have then a written certification and he did the written certification in the finding and it would be appropriate for the court to remand and have him make additional findings. And I don't think that that's contrary to what a court would do in a bench trial if findings were inadequate, just as this court would do in a sentencing proceeding if the findings were inadequate to go ahead and allow the judge a chance to make the findings. The judge was there. He found all the elements, but to supplement those with further explanation or perhaps to say, you know, if based on what this court's opinion is, I don't make those findings. If Your Honor's have no further questions, we respectfully request that the court affirm the judgment of the district court and the magistrate's contempt finding. Ms. Ray, do you think the lawyer should be treated more favorably than a mere civilian witness in their visitor to a courtroom? I'm thinking of the context of the Murillo case where Murillo was a lawyer. Sure. And was treated to a bench trial, not a summary proceeding. And I'm thinking in terms of the case I cited to your colleague there, Ms. Baldwin, the Nell case back in 1971, where Judge Hainsworth said we're going to give him a trial or give a do-over and it has to be before a different judge. Your Honor, I'm not familiar with the Nell case, but with respect. With respect to Murillo, what I can say is that in Murillo, whether or not the court felt, I mean, first of all, that was an immigration judge and it was actually a different substantive question in terms of what the violation was. It wasn't a summary contempt proceeding. But you're the one that brought it up. You brought it up. You cited it in your 28-J letter. I did. And if I may, I'd like to explain on what principle I cited Murillo because it was not for whether or not, because it was too different of a proceeding for me to rely on much of that opinion. The only thing I was relying on in terms of Murillo was this court's recognition that when court personnel are distracted from whatever they're doing, whether that is continuing with a different, moving on to a different proceeding or in the context of an immigration hearing, handling that immigration hearing, that that's enough to And so if you look at the last page of Murillo, this court says, yes, you know, even just the distraction that it provided the judge in that case. And Ms. Baldwin makes the point that the judge found that he heard and he was interrupted. Fair enough. But in this case, Judge Kerr himself heard and was interrupted from moving on to the next proceeding because he said, Marshall, go, go get her. And so we know that he was interrupted and that that my only point in Murillo was on that prong of the sufficiency of the evidence. Murillo supports the government's argument that that that the obstruction or the interference with the orderly administration justice prong is satisfied. If your honors have no further questions, we request that the court uphold the contempt judgment in this case. Thank you. Judge Diaz, Judge Floyd. Any questions? No, sir. I don't think. Thank you. Thanks. Thank you very much, Mr. Ray. Ms. Baldwin. Thank you, your honors. So I'd like to just start with a couple of corrections from what Ms. Ray stated. And first was the idea that the judge gave her an opportunity to speak in her defense. That didn't happen. The court's words were, quote, so do you want to say anything before I impose a sentence that in no way gives her an opportunity to defend against the contempt adjudication he just issued? Second of all, the Brown case does support us. Ms. Ray points to the fact that there the defendant was given the statutory maximum. But I would say Ms. Oliphant sentence was more serious here because she was given 10 sentence. Next, going on to we have no case regarding loud profanity. We do. It's Brooks. It was cited in our briefs. The government never addressed it. And there, one of the parties said, fix some of the SHIT to the other party as he was leaving the courtroom. And the D.C. court reversed it. They found, listen, there weren't findings on intent. You can't assume they realized how loud it was or that the court would think it's discourteous when the case had recessed. Second of all, the In Re Seal case at the D.C. circuit address doesn't. That's not here. We've already conceded that if the magistrate judge made the findings, it was directed at the court. We wouldn't be making the arguments we're making here. And in that case, the judge found that the profanity was directly made at him in a calculated way. So again, not our case. Ms. Baldwin, Ms. Ray would like, in the worst case scenario, I guess, for the government, it would like a do-over, would like the case to go back to allow Judge Kato to make those findings. What's your position on that? I'm not aware of authority for that position. I mean, the cases I've seen where the circuits have found the Rule 42 predicate deficient, they've reversed it. So I'm not aware of authority. The authorities I've found have reversed it. And I believe the Brooks D.C. case raised the fact that it would violate double jeopardy to do that. And second of all, as to the evidence to support the conviction, Ms. Ray speculates. Again, there were no findings. She claims there was a delay. The magistrate didn't find a delay. The record doesn't contain a delay. You know, all the court said was, Marshall, bring her back here for the summary contempt adjudication. That is part and parcel of the contempt adjudication and cannot supply the obstruction element. Again, this is not a matter of simply misbehavior in a courtroom. Criminal contempt is for misbehavior that obstructs the administration of justice, which is not to say misbehavior is allowed, because in egregious cases that, like, you know, insulting a judge like the Marshall case, that's going to be an up in and of itself. And then there are also, the judge has the option of issuing rules to people, like, this is my code of conduct in my courtroom. And 18 U.S.C. 401 subsection 3 makes a contempt to violate a court command. So here we'd ask that the court reverse her conviction. Oh, I'm sorry. I wanted to address the loud or boisterous point. That is, we can see that the Supreme Court noted that the witness's statement was, did not attempt to interfere with the court, violate a court command, or was loud or boisterous. So we acknowledge that could distinguish the situation here, but it shouldn't. And that's because the same principle animating the holding in Eaton, that the single profanity wasn't enough to present an imminent threat to justice, it's the same case here. Perhaps a loud profanity said during giving jury instructions would present such an imminent threat to the administration of justice that would warrant making that distinguishment, but not in the case here. I see my time has expired. So thank you all for your time. Thank you, Ms. Baldwin. We appreciate it. I appreciate the assistance of both fine lawyers. And if we were in Richmond, we would come down and shake your hands and congratulate you personally on doing a fine job. Maybe in Nepal, we'll be able to do that. We'll take this case under advisement, Madam Clerk, and proceed to the next one.
judges: Robert B. King, Albert Diaz, Henry F. Floyd